UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

KEVIN R. LAMB,

      Plaintiff,

v.

SCOTT CROFOOT and
TOWNSHIP OF JONESFIELD,

      Defendants.

Case No. 24-cv-10158

Honorable Robert J. White

---

## ORDER (1) DENYING PLAINTIFF'S MOTION TO TAKE JUDICIAL NOTICE AND (2) GRANTING DEFENDANTS' MOTION TO DISMISS THE AMENDED COMPLAINT WITH PREJUDICE

---

This case involves Plaintiff Kevin R. Lamb's claims against Defendants Township of Jonesfield (the Township) and Scott Crofoot, the Township's zoning administrator. (ECF No. 12). Before the Court is Defendants' motion to dismiss Plaintiff's amended complaint with prejudice pursuant to Fed. R. Civ. P. 12(b)(6) (failure to state a claim). (ECF No. 16). Also before the Court is Plaintiff's motion to take judicial notice of a fact when deciding the motion to dismiss. (ECF No. 29). The Parties fully briefed the motions and the Court held oral argument. For the

following reasons, the Court (1) denies Plaintiff's motion to take judicial notice and

(2) grants Defendants' motion to dismiss.[1]

## I.    Background

Plaintiff's factual allegations are summarized as follows:

Plaintiff sought to construct a greenhouse on his property, in the front-side corner of his lawn, near the intersection of Crawford Drive and M-46. (*See* ECF No. 12, PageID.92-94).[2]  In October 2023, with construction of the greenhouse ongoing, Crofoot arrived at the property to inspect the structure. (ECF No. 12, PageID.93-94). After Crofoot asked that construction on the greenhouse stop, Plaintiff "demanded that . . . Crofoot totally remove himself from the private property and" that "any legal concerns about the vegetable greenhouse . . . be put into writing and sent to him." (ECF No. 12, PageID.95).  Plaintiff repeatedly "directed, demanded, and told" Crofoot to leave the property, but Crofoot did not comply. (ECF No. 12, PageID.95-96).  "Angered by being denied desired warrantless access to the Crawford Drive property, . . . Crofoot immediately decided to issue, without pre-deprivation notice

---

[1] Furthermore, the Court at the hearing denied Plaintiff's motion for a status conference (ECF No. 33) as moot, and granted Defendants' motion for leave to file a supplemental exhibit (ECF No. 36). (ECF Nos. 39-40).  Nevertheless, the Court need not consider Defendants' supplemental exhibit, an image purportedly from the Township's zoning ordinance showing how a front yard is defined, to rule in their favor here.
[2] Plaintiff provides pictures of the property and the greenhouse location with his amended complaint. (*See* ECF No. 12, PageID.93-94; ECF No. 12-8, PageID.131).

or the opportunity to be heard, a stop work order against the vegetable greenhouse."
(ECF No. 12, PageID.96).   Crofoot reentered Plaintiff's property, still without
consent, attempting to post the stop work order. (ECF No. 12, PageID.97-98).   After
Crofoot left, he falsely reported to police that Plaintiff assaulted him,[3] and that the
greenhouse was being built "'in the right-of-way' [of M-46 and] without permits."
(ECF No. 12, PageID.94, 98-99).   Later that month, Crofoot mailed Plaintiff a notice
(and order for corrective action) alleging that the greenhouse violated Sections
302(1) ("Building Permits Required"), 303(1) ("Must Comply with Code
Requirements"), and 306(1) ("Required Yards") of the Township's zoning ordinance.
(ECF No. 12, PageID.99; ECF 12-3, PageID.111).

However, according to Plaintiff, Section 303(1) does not apply here, and the
greenhouse did not violate Section 306(1).[4] (ECF No. 12, PageID.100-01).   But
because Crofoot "threatened and bullied" Plaintiff "to the point of no return,"
Plaintiff ultimately dismantled the greenhouse. (ECF No. 12, PageID.101).   With
respect to Sections 303(1) and 306(1), the violation notice implicates that the
greenhouse was improperly constructed on "the M-46 Right-of-Way and required
yard area." (ECF 12-3, PageID.111).   Plaintiff denies that the greenhouse was built

---

[3] State charges against Plaintiff for allegedly assaulting Crofoot were dismissed in
May 2024, following a preliminary examination. (*See* ECF Nos. 23, 23-1).
[4] The amended complaint does not address whether the greenhouse complied with
Section 302(1).

within this right-of-way, and he nevertheless asserts that (1) this issue is not covered by the Township's ordinance and (2) "Crofoot does not have the authority or jurisdiction to enforce any alleged violation of a public highway easement . . . ." (ECF No. 12, PageID.100; *see also* ECF No. 12, PageID.94). Plaintiff also asserts that the greenhouse was properly located on his side yard as permitted by the Township's ordinance. (ECF No. 12, PageID.100).

Counts I and II of the amended complaint assert claims (1) against Crofoot in his individual capacity under 48 U.S.C. § 1983 and (2) against the Township under *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978). (ECF No. 12, PageID.101-05). Count I alleges that Defendants violated Plaintiff's Fourteenth Amendment due-process rights by infringing on his property rights without notice and a hearing. (ECF No. 12, PageID.101-03). Count II alleges that Defendants violated Plaintiff's Fourth Amendment rights when Crofoot entered onto Plaintiff's property without consent or a warrant. (ECF No. 12, PageID.103-05). Count III alleges that Defendants are liable for trespass because of Crofoot's conduct. (ECF No. 12, PageID.105-06). Lastly, Count IV challenges a provision of the Township's zoning ordinance as unconstitutional. (ECF No. 12, PageID.106-07).

Plaintiff seeks damages under 42 U.S.C. § 1983, as well as declaratory and injunctive relief with respect to his constitutional and trespass claims. (ECF No. 12,

PageID.107-08).  Defendants now move to dismiss the complaint under Fed. R. Civ. P. 12(b)(6). (ECF No. 16).

## II.  Legal Standards

To survive a Rule 12(b)(6) motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009), *quoting Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556).  The plausibility standard "does not impose a probability requirement at the pleading stage; it simply calls for enough fact to raise a reasonable expectation that discovery will reveal evidence of illegal [conduct]." *Twombly*, 550 U.S. at 556. Put another way, the complaint's allegations "must do more than create speculation or suspicion of a legally cognizable cause of action; they must show entitlement to relief." *League of United Latin Am. Citizens v. Bredesen*, 500 F.3d 523, 527 (6th Cir. 2007) (emphasis in original; citing *Twombly*, 550 U.S. at 555-56).

"In ruling on the issue, a district court must construe the complaint in the light most favorable to the plaintiff, accept its allegations as true, and draw all reasonable inferences in favor of the plaintiff." *Wesley v. Campbell*, 779 F.3d 421, 428 (6th Cir. 2015) (quotation marks and citation omitted).  "When a court is presented with a

Rule 12(b)(6) motion, it may consider the Complaint and any exhibits attached thereto, public records, items appearing in the record of the case and exhibits attached to [a] defendant's motion so long as they are referred to in the Complaint and are central to the claims contained therein." *Bassett v. Nat'l Collegiate Ath. Ass'n*, 528 F.3d 426, 430 (6th Cir. 2008).

Most of the parties' filed exhibits with respect to the 12(b)(6) motion can be properly considered under *Bassett*.  However, Plaintiff's response provides for the first time a video exhibit of body-camera footage from when Crofoot reported Plaintiff to police (*see* ECF Nos. 17-3, 22) that the Court declines to consider.  This video was submitted by Plaintiff, not attached to Defendants' motion.  And because the video merely shows Crofoot's after-the-fact and one-sided explanation of what happened at Plaintiff's property, rather than the incident itself, it is not central to Plaintiff's claims. *Contra Weddle v. DeWitt Charter Twp.*, No. 23-714, 2024 U.S. Dist. LEXIS 19394, at *13 (W.D. Mich. Feb. 5, 2024) ("The body camera video is clearly central to Weddle's claims because it shows the incident in question.").

In any event, the Court accepts as true Plaintiff's allegations that Crofoot lied to police about (1) Plaintiff assaulting him and (2) the greenhouse interfering with the M-46 right of way. *See Wesley*, 779 F.3d at 428; *see also Weddle*, 2024 U.S. Dist. LEXIS 19394 at *8 ("the Court can only rely on the video over the complaint to the degree the video is clear and blatantly contradicts or utterly discredits the plaintiff's

version of events.") (cleaned up; quoting *Bell v. City of Southfield*, 37 F.4th 362, 364 (6th Cir. 2022)).

## III.    Analysis

### A.    Judicial Notice

Plaintiff asks the Court, in deciding Defendants' motion to dismiss, to take judicial notice "of [the] forty-three-foot (43-ft) right-of-way [regarding M-46,] as documented in public records supplied by the Michigan Department of Transportation [MDOT]." (ECF No. 29, PageID.515).  Plaintiff argues that such judicial notice based on these public records is warranted and will show that the greenhouse never interfered with the M-46 right-of-way. (ECF No. 29, PageID.520-22).

The MDOT records include numerous separate documents. (*See* ECF No. 28-1).  The first is a survey titled "RIGHT-OF-WAY MAP."  Although somewhat difficult to read, this document appears to (1) include a "last revised date" of March 20, 2001, and (2) show a 43-foot "R.O.W." on the portion of M-46 adjacent to Plaintiff's property. (ECF No. 28-1, PageID.478).  The second document is a 1921 letter from the State Highway Commissioner to the Saginaw County Board of Road Commissioners outlining a law that established various "public wagon roads" "as a Trunk Line Highway," but it says nothing regarding any specific right of way or measure. (ECF No. 28-1, PageID.479-80).  There is also a 1924 document titled

7

"RELEASE OF RIGHT OF WAY," conveying to the County of Saginaw—"for highway purposes and to permit the altering, widening and improving of the existing highway"—"[a] strip of land 86 [feet] wide, lying 43 [feet to] each side of and adjacent to the centerline of Gratiot Road[5] . . . ." (ECF No. 28-1, PageID.481).

Lastly, the records include 32 pages from the County's liber of deeds regarding various right-of-way conveyances throughout the mid-1920s that consistently refer to strips of land 43 feet from the centerline of M-46. (*See* ECF No. 28-1, PageID.483-514).   MDOT produced these documents in response to a subpoena to produce "records establishing the [MDOT] state-highway right-of-way located near the corner of Crawford Drive and M-46 (Gratiot)"—*i.e.*, where Plaintiff's property is located. (ECF No. 24-3, PageID.457; ECF No. 28-1, PageID.477).

In response to Plaintiff's motion, Defendants argue that judicial notice is improper because the MDOT records are ambiguous and do not indisputably establish any fact to support such action. (ECF No. 30, PageID.525-27).  Defendants assert the following instances of ambiguity: (1) the survey refers to the "'approximate parcel location'" with respect to Plaintiff's property; (2) the survey notes "that [the] 'village limit line does not appear to match the Saginaw County GIS app'"; (3) the 1921 letter states that "'the right is reserved upon final location

---

[5] Gratiot Road is synonymous with M-46. (*See* ECF No. 28-1, PageID.481).

survey to make such minor changes in alignment as may be deemed practicable'"; (4) the 1924 release of the right of way describes the conveyance as being 43 feet from the centerline of M-46 "'*as now surveyed*'"; and (5) the 1924 release conveyed the right of way to the County of Saginaw, not MDOT. (ECF No. 30, PageID.525-26 (emphasis in original) (quoting ECF No. 28-1, PageID.478, 480-81). Defendants argue that how the road was surveyed in 1921 and 1924 is unknown, the right of way "cannot indisputably be determined by reference to records that are less than clear," and "[a] proper way to determine the location of the right-of-way might be to have a formal sealed survey conducted." (ECF No. 30, PageID.526).

In reply, Plaintiff argues that Defendants' focus on the original documents from when the highway was created is misguided because the 2001 survey clearly establishes the right of way as extending 43 feet from the centerline of M-46. (ECF No. 31, PageID.535-37). Plaintiff alternatively argues that if the Court declines to take judicial notice of the M-46 right of way, it should still consider the MDOT records as an aid "to easily reject Defendants' motion to dismiss." (ECF No. 31, PageID.537).

Courts may judicially notice a fact "that is not subject to reasonable dispute because it . . . can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b). "Judicial notice is only appropriate if the matter is beyond reasonable controversy. The rule proceeds upon

the theory that dispensing with traditional methods of proof should only occur in clear cases." *United States v. Ferguson*, 681 F.3d 826, 834 (6th Cir. 2012) (cleaned up).  "[I]n general, a court may only take judicial notice of a public record whose existence or contents prove facts whose accuracy cannot reasonably be questioned." *Passa v. City of Columbus*, 123 F. App'x 694, 697 (6th Cir. 2005).

The Court declines to take the requested judicial notice.  As an initial matter, the Court disagrees that the 2001 survey is ambiguous with respect to a 43-foot right of way existing along the relevant portion of M-46, which is clearly depicted.  But the MDOT records at most only show this status as of 2001.  How this right of way may have changed over the following two-plus decades remains completely unknown.  For this reason, the current status of the M-46 right of way is not beyond reasonable controversy, and Plaintiff's request to take judicial notice is declined.

Nevertheless, the Court will still consider these public records in ruling on Defendants' 12(b)(6) motion. *See Bassett*, 528 F.3d at 430.  And construing the amended complaint in Plaintiff's favor, accepting its facts as true, and drawing all reasonable inferences in Plaintiff's favor, *see Wesley*, 779 F.3d at 428, the Court accepts at this time that M-46's current right of way extends 43 feet from the road's centerline.

**B.    Motion to Dismiss**

**1.    1983 Claims Against Crofoot**

10

Plaintiff asserts § 1983 claims against Crofoot under the Fourteenth and Fourth Amendments.

### *i.* **Fourteenth Amendment Claim**

Plaintiff claims that he was not afforded adequate due process because Crofoot issued the stop work order without notice or the opportunity for a hearing. (ECF No. 1, PageID.101, 103). Plaintiff asserts that there were no emergency or exigent circumstances at play, so he was entitled to a pre-deprivation hearing before any stop work order could issue. (ECF No. 12, PageID.102). He relatedly asserts that Crofoot "failed to provide required and/or sufficient due process as mandated by the Fourteenth Amendment in the form of a pre-deprivation hearing *before* suspending and/or terminating the right to use and benefit from the Crawford Drive property." (ECF No. 12, PageID.102).

Defendants argue that this claim fails because Plaintiff has not alleged a protected property interest. (ECF No. 16, PageID.262-65). According to Defendants, there is no protected property interest in a desired use prohibited by the Township's zoning ordinance, like the greenhouse here. (ECF No. 16, PageID.262-65). Defendants elaborate that, as shown from the amended complaint, the greenhouse violated Section 306(1)(a) of the Township's zoning ordinance—which prohibits the construction of accessory buildings on a property's front yard. (ECF No. 16, PageID.263-65). They argue that "the scope of the M-46 right-of-way is

immaterial to the outcome of this case because the greenhouse was located within Plaintiff's front yard." (ECF No. 16, PageID.265 n. 4). Defendants also argue that plaintiff cannot assert any property right in governmental procedures themselves absent some protected interest. (ECF No. 16, PageID.265).

Plaintiff counters that he has the "fundamental right" as a landowner to use his property as he sees fit, including "to build a greenhouse that require[s] no permits." (ECF No. 17, PageID.364-65). He also claims to hold "the _liberty_ right to be free of *sua sponte* governmental interference of his fundamental right of private property." (ECF No. 17, PageID.366). Concerning the greenhouse's compliance, Plaintiff asserts that Crofoot was wrong about the greenhouse's illegality— particularly regarding the M-46 right of way and the applicability of the requirements of Michigan's building code—and that any alleged zoning violation is nevertheless "meaningless" to the extent the Township's zoning ordinance is preempted by Michigan's Right to Farm Act (the RTFA). (ECF No. 17, PageID.366-67, 367 n. 3). Plaintiff maintains that Crofoot's stop work order infringed on his protected property rights without the required opportunity to be heard under the Fourteenth Amendment. (ECF No. 17, PageID.367-68).

The Fourteenth Amendment provides that "[n]o State shall . . . deprive any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV. Procedural due process, "at its core requires notice and an opportunity to be

heard 'at a meaningful time and in a meaningful manner.'" *Garcia v. Fannie Mae*, 782 F.3d 736, 741 (6th Cir. 2015) (quoting *Armstrong v. Manzo*, 380 U.S. 545, 552 (1965)); *see also Mathews v. Eldridge*, 424 U.S. 319, 333 (1976). "The elements of a procedural due process claim are: (1) a life, liberty, or property interest requiring protection under the Due Process Clause, and (2) a deprivation of that interest (3) without adequate process." *Fields v. Henry Cnty., Tenn.*, 701 F.3d 180, 185 (6th Cir. 2012).

Plaintiff relies on a nonbinding Michigan dissent and other out-of-state cases as establishing his general, fundamental right to use his property as he sees fit and, therefore, to build a greenhouse without permits.  But longstanding Michigan Supreme Court authority provides that property owners' right to the free and full use of their property is subject to zoning regulations as long as they reasonably relate to the promotion of public health, safety, morals, or general welfare. *Roman Catholic Archbishop of Detroit v. Village of Orchard Lake*, 333 Mich. 389, 392-94 (1952); *Padover v. Farmington*, 374 Mich. 622, 637-39 (1965); *id.* at 640 (SMITH, J, concurring); *see also Int'l Outdoor v. City of Livonia*, No. 325243, 2016 Mich. App. LEXIS 1145, at *10-11 (Mich. Ct. App. Jun. 14, 2016).  Notably, Plaintiff does not challenge any of the Township's zoning provisions regarding permitting requirements, accessory structures, and the like that Plaintiff's greenhouse potentially violated.

Next, "[w]hether a person has a 'property' interest is traditionally a question of state law," *EJS Properties, LLC v. City of Toledo*, 698 F.3d 845, 855 (6th Cir. 2012), and Michigan "courts apply an 'entitlement test' to determine whether a plaintiff has vested property rights under state law, subject to Fourteenth Amendment due process protection." *Mockeridge v. Alcona Cnty. by Bd. of Commissioners*, 696 F. Supp. 3d 303, 324 (E.D. Mich. 2023) (cleaned up; citing *Dorr v. City of Ecorse*, 305 F. App'x 270, 275 (6th Cir. 2008)). "[A] protectible property right exists only if a plaintiff has a legitimate claim of entitlement or a justifiable expectation in the approval of his [p]lan" for use of the property, and the Court "must look to state zoning laws to determine whether a legitimate claim of entitlement or a justifiable expectation exists." *Andreano v. City of Westlake*, 136 F. App'x 865, 871 (6th Cir. 2005).

The "key inquiry in determining whether a property right has vested is possession of a valid building permit coupled with substantial reliance and actual construction." *Id.* (internal quotations omitted); *Dorr v. City of Ecorse*, 305 F. App'x 270, 275 (6th Cir. 2008) ("Under Michigan law, it is well established that possession of a valid permit coupled with substantial reliance thereon, including actual construction, will bestow vested property rights to a non-conforming structure."). And Defendants are correct that there cannot be a vested property right when a specific use is prohibited by an applicable zoning ordinance. *See Green Genie, Inc.*

14

*v. City of Detroit*, 599 F. Supp. 3d 544, 557 (E.D. Mich. 2022) ("[T]he plaintiffs had no protected property interest in obtaining a special land use permit, because . . . they never had any legitimate entitlement to such a use, which expressly is prohibited by the City's zoning ordinance. . . . Because it is undisputed that the plaintiffs' proposed dispensary site is [noncompliant with the ordinance], they never could have harbored any reasonable expectation that their application for a special land use would be granted.").  Indeed, at least in the context of special land use and permit applications, even those complying with minimum code requirements do not create a vested property interest "if a municipality has discretion under its zoning code to deny" the application. *Andreano*, 136 F. App'x at 871; *but see Brown v. City of Ecorse*, 322 F. App'x 443, 445-46 (6th Cir. 2009) ("Such a property interest would exist . . . if the board's discretion were so circumscribed that approval of the plaintiff's proposed use of the property became mandatory once he complied with the minimal requirements imposed on him.")

Here, the stop work order Crofoot initially left at the property, as justification, only says "BUILDING W/O PERMITS." (ECF No. 12-2, PageID.110).  The later-issued notice outlines violations of Sections 302(1), 303(1), and 306(1) of the Township's zoning ordinance. (ECF No. 12-3, PageID.111). Section 302(1) states that "[a] building permit must be obtained prior to the construction of any structure that is greater than 200 square feet in area." (ECF No. 16-2, PageID.316).  Section

303(1) states, in relevant part, that "[e]very dwelling must comply with all pertinent

housing, fire, and construction codes in addition to the requirements of this

Ordinance." (ECF No. 16-2, PageID.318).  Section 306(1) states, in relevant part

(*see* Section 306(1)(a)), that "[n]o accessory building, attached or detached, shall

project into a required front yard." (ECF No. 16-2, PageID.322).

The Court first addresses Plaintiff's contention that any alleged zoning

violation is irrelevant because of Michigan's RFTA, Mich. Comp. Laws § 286.471

*et seq.*  Because Plaintiff's counsel essentially conceded at the hearing that Plaintiff

has no valid claims without preemption under the RFTA, the case largely turns on

this issue.

The RFTA provides, in relevant part:

> A farm or farm operation shall not be found to be a public or
> private nuisance if the farm or farm operation alleged to be a nuisance
> conforms to generally accepted agricultural and management practices
> according to policy determined by the Michigan commission of
> agriculture.

*        *        *

> . . . it is the express legislative intent that this act preempt any
> local ordinance, regulation, or resolution that purports to extend or
> revise in any manner the provisions of this act or generally accepted
> agricultural and management practices developed under this act.
> Except as otherwise provided in this section, a local unit of government
> shall not enact, maintain, or enforce an ordinance, regulation, or
> resolution that conflicts in any manner with this act or generally
> accepted agricultural and management practices developed under this
> act.

Mich. Comp. Laws §§ 286.473(1), 286.474(6).

"[T]he RTFA no longer allows township zoning ordinances to preclude farming activity that would otherwise be protected by the RTFA. Rather, any township ordinance, including a zoning ordinance, is unenforceable to the extent that it would prohibit conduct protected by the RTFA." *Charter Twp. of Shelby v. Papesh*, 267 Mich. App. 92, 107 (2005). At the hearing, Plaintiff's counsel argued that dismissal is inappropriate at this stage because whether Plaintiff's desired greenhouse involved activity protected under the RTFA presents a question of fact and must be assumed as true on a motion to dismiss. Defense counsel countered that the RFTA only provides property owners an affirmative defense in nuisance suits, and it therefore does not apply here.

As an initial matter, it is clear "[t]he RTFA was enacted to protect farmers from nuisance lawsuits." *Scholma v. Ottawa County Rd. Comm'n*, 303 Mich. App. 12, 22 (2013). And Michigan cases addressing the RTFA do so largely in the context of defending nuisance suits. But it remains unclear whether the RTFA may be invoked *exclusively* as a defense in such suits.

One unpublished case rejected the plaintiff's reliance on the RTFA in a zoning enforcement challenge because "the purpose of the RTFA is to protect farmers from nuisance suits, not to make farms exempt from zoning." *Padgett v. Mason Cnty. Zoning Comm'n*, Nos. 236458 and 236459, 2003 Mich. App. LEXIS 3160, at *11

(Mich. Ct. App. Dec. 9, 2003). Another unpublished case—which involved the plaintiff's claims for violations of due process and the RTFA, as well as a constitutional challenge to a local ordinance—stated that "[t]he implication [in other caselaw] is that the RTFA is a defense to be raised and not inherently an affirmative cause of action." *Oberly v. Twp. of Dundee*, No. 304122, 2012 Mich. App. LEXIS 1816, at *3, 26 (Mich. Ct. App. Sept. 20, 2012). Nevertheless, the *Oberly* Court went on to substantively address whether the plaintiff's conduct at issue was protected under the RTFA. *Id.* at *26-30.

Other Michigan cases similarly address the substantive applicability of the RTFA with respect to zoning enforcement even though raised by the plaintiff. *See Brown v. Summerfield Twp.*, No. 304979, 2012 Mich. App. LEXIS 1664, at *1-3 (Mich. Ct. App. Aug. 23, 2012). And in *Scholma*, although the court criticized the plaintiff's use of the RTFA "as a sword" rather than a "shield" as intended under the Act, it still substantively addressed her arguments under the RTFA before rejecting them. *Scholma*, 303 Mich. App. at 23-27. Given the lack of any clear and binding authority on this issue, the Court cannot conclude that the RFTA may be invoked as an affirmative defense in nuisance suits only.

In any event, Plaintiff's reliance on the RTFA fails because (1) it only protects commercial farming operations, and (2) it does not preempt zoning ordinances regulating the permitting and location of greenhouses. First, although Plaintiff's

counsel seemed to dispute this at the hearing, Michigan law is clear that the RTFA preempts ordinances only to the extent that they impose restrictions on commercial farming operations. *Papesh*, 267 Mich. App. at 99-101 (interpreting the RTFA to protect only "commercial" farms and farm operations, which requires "producing or manufacturing an item intended to be marketed and sold at a profit"); *Brown*, 2012 Mich. App. LEXIS 1664 at *2-3 (affirming summary disposition for the defendant because the plaintiff "offered no evidence that she kept horses for profit," as needed to support application of the RTFA).

Here, Plaintiff's amended complaint merely alleges that he wanted to build the greenhouse "to grow vegetables" at his residential property (ECF No. 12, PageID.92), with absolutely nothing therein regarding anything being marketed and sold for profit.  Accordingly, even though "there is no minimum level of sales that must be reached before the RTFA is applicable," *Papesh*, 267 Mich. App. at 101 n. 4, the amended complaint fails to allege *any* level of sales that would allow for application of the RTFA in this case.

Next, even assuming Plaintiff sufficiently pled the existence of a commercial farming operation protected by the RTFA, it would not preempt the ordinance provisions at issue.  Specifically, the Michigan Supreme Court has "held that the RTFA did not exempt the plaintiffs from a zoning ordinance governing the permitting, size, height, bulk, floor area, construction, and location of buildings used

for their greenhouse operations because no provisions in the RTFA or the [generally accepted agricultural and management practices] addressed the permitting, size, height, bulk, floor area, construction, and location of buildings used for greenhouse or related agricultural purposes." *Scholma*, 303 Mich. App. at 26 (citing *Papadelis v. City of Troy*, 478 Mich. 934 (2007)).

Plaintiff's greenhouse was therefore not exempt under the RFTA from the Township's zoning provisions at issue here, which likewise govern permitting and location with respect to the greenhouse.  In fact, defense counsel at the hearing noted that Plaintiff's greenhouse was not wholly prohibited under the Township's ordinance and would have been allowed if only constructed in Plaintiff's side yard with a permit.

For these reasons, the RTFA does not preempt the Township's zoning ordinance in this case.  Having resolved the parties' dispute regarding the RTFA, the Court now addresses whether Plaintiff's greenhouse complied with the Township's ordinance.

As an initial matter, neither Plaintiff's amended complaint nor subsequent briefing disputes that he initially constructed the greenhouse without seeking a permit pursuant to Section 302(1) of the Township's zoning ordinance.  But because it is unclear whether the greenhouse was greater than 200 square feet in area as

needed to trigger this requirement, the Court assumes for the purposes of the instant motion that the greenhouse was exempt from Section 302(1).[6]

It is also unclear how the alleged interference with M-46 relates to any of the ordinance provisions at issue.  Even if relevant, plaintiff has plausibly pled that the greenhouse did not interfere with the M-46 right of way.  Again, the Court finds at this time that M-46's current right of way extends 43 feet from the road's centerline.  *See supra* Section III.A.  And the amended complaint clearly shows the greenhouse located beyond this 43-foot right of way. (*See* ECF No. 12-8, PageID.131).

Nevertheless, the Court agrees with Defendants that the M-46 right of way is immaterial to the outcome here because the greenhouse was otherwise prohibited in Plaintiff's front yard.  As stated, Section 306(1)(a) of the Township's zoning ordinance prohibits any "accessory building" on a property's front yard.  The ordinance definition of an accessory building provides specific examples, including "greenhouses." (ECF No. 16-1, PageID.284).  And the ordinance defines front yard as "[a] yard extending across *the full width of the lot*, the depth of which is the distance between the front lot line and foundation line of the building or structure." (ECF No. 16-1, PageID.307 (emphasis added)).  The ordinance thus prohibits

---

[6] The Court therefore does not address Plaintiff's argument regarding Mich. Comp. Laws § 125.1510(8) (*see* ECF No. 17, PageID.366-67), which states that "[a] building permit is not required for a building incidental to the use for agricultural purposes of the land on which the building is located if the building is not used in the business of retail trade."

greenhouses in the front yard as so defined, and the amended complaint shows Plaintiff's greenhouse in this very location. (*See* ECF No. 12-8, PageID.131). Because Plaintiff's greenhouse was noncompliant with the ordinance, he never could have harbored any reasonable expectation that it was allowed or would be approved. *See Green Genie, Inc.*, 599 F. Supp. 3d at 557.

In sum, Plaintiff has not adequately pled a constitutionally protected property interest, so his Fourteenth Amendment claim against Crofoot (Count I, in part) is dismissed.

### *ii.*    Fourth Amendment Claim

Plaintiff alleges that Crofoot violated his Fourth Amendment rights by entering onto the property with no warrant after Plaintiff's consent was "previously and repeatedly revoked." (ECF No. 12, PageID.103-05). According to the amended complaint, Crofoot committed an "unauthorized[] and non-consensual trespass on private property for purposes of alleged enforcement of local and state laws . . . ." (ECF No. 12, PageID.103). Defendants argue that dismissal of this claim is warranted because Plaintiff fails to adequately plead that Crofoot subjected him to a search. (ECF No. 16, PageID.266-69).

The Fourth Amendment protects people from "unreasonable searches and seizures." U.S. Const. amend. IV. A warrantless search is "per se unreasonable,"

*Katz v. United States*, 389 U.S. 347, 357 (1967), unless it "falls within a specific exception to the warrant requirement," *Riley v. California*, 573 U.S. 373, 382 (2014).

There are two analytical approaches to determining whether a Fourth Amendment search has occurred. *See United States v. Jones*, 565 U.S. 400, 408-09 (2012). "The most familiar approach examines whether a person claiming Fourth Amendment protection had a 'legitimate expectation of privacy' in the place that was searched." *Hicks v. Scott*, 958 F.3d 421, 431 (6th Cir. 2020) (quoting *Rakas v. Illinois*, 439 U.S. 128, 144 (1978)). "This is a two-part inquiry." *Id.* (citing *Katz*, 389 U.S. at 361 (HARLAN, J., concurring)).

"First, the person claiming Fourth Amendment protection must have 'exhibited an actual (subjective) expectation of privacy' in the targeted area." *Id.* (quoting *Katz*, 389 U.S. at 361 (HARLAN, J., concurring)). "Second, even if the person demonstrates a subjective expectation of privacy, that expectation must also be one that society is prepared to recognize as reasonable." *Id.* (internal quotations omitted; quoting *Katz*, 389 U.S. at 361 (HARLAN, J., concurring)). "This is necessarily a fact-dependent inquiry and must be made on a case-by-case basis." *Id.* (citation and quotation marks omitted).

Additionally, the Supreme Court has more recently revived a "property-based" approach to Fourth Amendment searches. *Florida v. Jardines*, 569 U.S. 1, 11 (2013); *see also Jones*, 565 U.S. at 406-07 n. 3 (finding a Fourth Amendment search

based exclusively on the government's "physical[] intru[sion] on a constitutionally protected area"). Under this approach, "Fourth Amendment rights do not rise or fall with the *Katz* formulation, but rather retain an irreducible minimum of protection from intrusions into those areas enumerated by the Fourth Amendment." *Hicks*, 958 F.3d at 431 (cleaned up; quoting *Jones*, 565 U.S. at 406). "[W]hen the government gains evidence by physically intruding on constitutionally protected areas," it is "unnecessary" to consider whether the intrusion violated a person's reasonable expectation of privacy under *Katz*; instead, the physical intrusion itself is "enough to establish that a search occurred." *Jardines*, 569 U.S. at 11.

However, a search under this approach only occurs "when the government[] (1) trespasses upon a constitutionally protected area[] (2) to obtain information." *Taylor v. City of Saginaw*, 922 F.3d 328, 332 (6th Cir. 2019). "Once the court determines the government has trespassed upon a constitutionally protected area, it must then determine whether the trespass was conjoined with an attempt to find something or to obtain information." *Id.* at 333 (cleaned up; quoting *Jones*, 565 U.S. at 408 n. 5).

Defendants specifically argue that Plaintiff fails to establish that any search occurred under either approach. Under *Katz*, they assert that Plaintiff had no subjective or reasonable expectation of privacy "in the existence of the greenhouse" that he constructed in public view at the corner of the lot. (ECF No. 16, PageID.66-

24

68).   Under *Jones*, they assert that Plaintiff merely alleges a trespass, and that Crofoot did not enter the property to obtain any information. (ECF No. 16, PageID.68-69).

In response, Plaintiff first generally maintains that Crofoot violated his Fourth Amendment rights, specifically when he reentered Plaintiff's property without a warrant to post the stop work order after Plaintiff explicitly and repeatedly revoked any consent for Crofoot to be there. (ECF No. 17, PageID.368-70).  Plaintiff does not dispute Defendants' contention that Crofoot's conduct did not constitute a search under *Katz* and *Jones*.   Instead, Plaintiff argues that Crofoot's stop work order effectuated a warrantless, unauthorized *seizure* of his property. (ECF No. 17, PageID.370-72).  According to Plaintiff, "[i]ssuing the stop work order (seizing the right to free use of property) and entering the property to physically seize custody of the greenhouse by posting [the order] violated the Fourth Amendment by effectuating a warrantless seizure." (ECF No. 17, PageID.371).

The only relevant authority Plaintiff cites for this position is *Roberts v. Jefferson Cnty.*, No. 98-524-AS, 1999 U.S. Dist. LEXIS 20913, at *18 (D.C. Ore. Oct. 2, 1999).  In allowing a claim of abuse of process (which required an "actual arrest or property seizure") to advance to trial, the *Roberts* court stated that "'[s]eizure' could be defined as not being allowed to build on your property due to the placement of a stop work order." *Id.* at *17-18.

25

However, where the plaintiffs recently made the same argument in this district, the court stated:

> Plaintiffs rely on inapplicable cases from outside the Sixth Circuit where the courts failed to hold that the issuance of stop work order, without more, constitutes a seizure or taking of property. Plaintiffs offer no support for their contention that "[p]ossessory interests in real property includes the right to exercise absolute control over it," and the Court finds that it is *inconsistent with well-recognized laws and regulations established by zoning ordinances, building departments, etc.*

*Groleau v. City of Detroit*, 2023 U.S. Dist. LEXIS 82974, at *12-13 (E.D. Mich. May 11, 2023) (emphasis added; alteration in original).

And the Sixth Circuit in *Widgren*, 429 F.3d at 580-81 (6th Cir. 2005), cited approvingly to the Tenth Circuit's decision affirming summary judgment for the defendants concerning a claim similar to the one here. *See Artes-Roy v. City of Aspen*, 31 F.3d 958 (10th Cir. 1994). In *Artes-Roy*, the court held that a building inspection supervisor's warrantless entry upon the plaintiff's property to enforce a prior stop work order was neither a search nor a seizure under the Fourth Amendment. *Id.* at 962.

> For purposes of this appeal we assume [the supervisor] himself pushed open the door to the premises and stepped into the entryway without any proper consent. [The supervisor] was not on the premises to inspect for a violation of the building code; he and the inspector had already seen what they considered violations of the stop work order, from outside the premises. It seems clear [the supervisor] did not intend to make any arrest on the premises. . . . To issue a citation, of course, is not to make an arrest. . . . Thus, Lyman did not enter plaintiff's home for either a search *or a seizure*.

26

> . . . Lyman had a right to approach plaintiff's home to talk to her when he observed from the street workers violating the stop work order. . . . Lyman's intrusion was minimal, even if he was more than one foot inside the entryway.  It is clear he was not there to inspect *or to take into physical custody* any person or property.

*Id.* (citations omitted; emphasis added).

Similarly here, Crofoot's entry onto Plaintiff's property to post the stop work order, although done without Plaintiff's consent, was minimally invasive.  And nothing in the amended complaint shows that Crofoot, in doing so, looked for or discovered any information not already apparent from public view. *See id; see also Widgren*, 429 F.3d at 581 ("[Here,] as in *Artes-Roy*, . . . nothing was looked for and nothing was found, except the existence of a structure.  Mr. Lenz merely posted a citation in his capacity as the Township's zoning administrator and did not seek to discover incriminating evidence.  Moreover, the intrusion here was even more minimal than in *Artes-Roy* because Mr. Lenz never set foot in the house. . . . Mr. Lenz, therefore, did not conduct a Fourth Amendment search.").

Nor does the amended complaint show that Crofoot took physical custody of Plaintiff's property or otherwise meaningfully interfered with his property rights. *See F.P. Dev., LLC v. Charter Twp. of Canton*, 16 F.4th 198, 208 (6th Cir. 2021) ("the word 'seizure' has meant a 'taking possession,' so a 'seizure' of property occurs when 'there is some meaningful interference with an individual's possessory interests in that property.'") (cleaned up; citations omitted).  The Court reiterates—

contrary to Plaintiff's claimed right to use his property as he sees fit and to build a greenhouse without permits—that Plaintiff has not adequately pled a constitutionally protected property interest in this case. *See supra* Section III.B.1.*i*.   For these reasons, Plaintiff fails to state a claim for any Fourth Amendment violation related to Crofoot's conduct, and the Fourth Amendment claim against Crofoot (Count II, in part) is dismissed.

In sum, Plaintiff has failed to adequately plead that Crofoot committed any constitutional violation.   The Court therefore need not address Defendants' additional argument that Crofoot is entitled to qualified immunity. *See Anders v. Cuevas*, 984 F.3d 1166, 1181 (6th Cir. 2021) ("Anders' class-of-one Equal Protection claim is insufficiently pleaded, and we need not address the issue of qualified immunity as to this claim.").

### 2.    Claims Against the Township

A municipality cannot be held liable under § 1983 simply because it employs a tortfeasor, nor can it be liable "for an injury inflicted solely by its employees or agents." *Monell*, 436 U.S. at 694; see also *Board of the County Comm'rs v. Brown*, 520 U.S. 397, 403 (1997) ("We have consistently refused to hold municipalities liable under a theory of respondeat superior.").  Instead, a municipality may be held liable "only for '[its] own illegal acts.'" *Connick v. Thompson*, 563 U.S. 51, 60 (2011) (quoting *Pembaur v. Cincinnati*, 475 U.S. 469, 479 (1986)).

28

However, a plaintiff's *Monell* claim necessarily fails when there is no underlying constitutional violation. *Dykes-Bey*, 2024 U.S. Dist. LEXIS 236496 at *18 (citing *Burgess v. Fischer*, 735 F.3d 462, 478 (6th Cir. 2013)).  Because Plaintiff has not stated a plausible claim that Crofoot violated any of his constitutional rights, his claims against the Township (Counts I and II, in part) are dismissed.

### 3.    Constitutionality of Zoning Ordinance

Plaintiff challenges Section 901(1)(D) of the Township's zoning ordinance (ECF No. 12, PageID.106-07), which provides:

> INSPECTIONS. For purposes of this Ordinance, the Zoning Administrator shall have the power to make inspections of any building or parcel as necessary to enforce this Ordinance.

(ECF No. 16-3, PageID.329).

According to the amended complaint:

> [This provision], as being applied by Defendants, purports to authorize Defendant Crofoot to enter any property at any time (like Plaintiff Lamb's) without a first securing a valid warrant when desiring "to make inspections of any building or parcel as necessary to enforce this Ordinance."

> Said provision of the Ordinance is unconstitutional as authorizing warrantless permissionless searches of private property like Plaintiff Lamb's residence and land contrary to the Fourth Amendment.

> To the extent that Section 901(1)(D) purports to authorize an "administrative search," Section 901(1)(D) fails to be constitutionally sufficient by failing to provide the subject of the search the required opportunity of pre[-]compliance review of any proposed search before

a neutral decisionmaker. See *City of Los Angeles, Calif. v. Patel*, 576
U.S. 409 (2015).

(ECF No. 12, PageID.106-07).

Defendants argue that Plaintiff asserts only an as-applied constitutional claim,
which fails because it is entirely premised on Crofoot having violated Plaintiff's
Fourth Amendment rights, which did not occur. (ECF No. 16, PageID.273-75).
Plaintiff counters that the zoning provision "is being challenged because it purports
to authorize Crofoot to enter any property at any time (like [Plaintiff]'s) without
first securing a valid warrant when desiring to make inspections of any building or
parcel as necessary to enforce this Ordinance." (ECF No. 17, PageID.377).  Plaintiff
argues that Crofoot entered his property without a warrant or permission once
already, and that there is a substantial risk he will do so again "based . . . on an illegal
local ordinance." (ECF No. 17, PageID.378).  Plaintiff also asserts that the ordinance
provision allows for—and/or Crofoot's conduct thereunder effectuated—an
improper administrative search without the opportunity for pre-compliance review.
(ECF No. 17, PageID.378 n. 8).

Two distinct types of constitutional challenge are at issue here.  An as-applied
constitutional challenge "consists of a challenge to the statute's application only to
the party before the court." *Amelkin v. McClure*, 205 F.3d 293, 296 (6th Cir. 2000).
By contrast, a facial challenge shows, as relevant here, "that there truly are 'no' or

at least few 'circumstances' in 'which the Act would be valid." *Connection Distrib. Co. v. Holder*, 557 F.3d 321, 335 (6th Cir. 2009) (en banc) (citation omitted).

Here, it is unclear from the amended complaint and Plaintiff's responsive briefing whether he is making an as-applied and a facial challenge, or—as Defendants claim—only the former. He explicitly mentions the zoning provision's unconstitutionality only as applied to him, and the amended complaint says nothing of any facial challenge. But Plaintiff also asserts that the provision allows for the unconstitutional, warrantless entry onto "any property at any time" (ECF No. 12, PageID.106; ECF No. 17, PageID.377). And Plaintiff's counsel at the hearing indicated that the distinction between an as-applied and facial challenge is somewhat fuzzy in this case.

In any event, Plaintiff cannot maintain either an as-applied or a facial challenge here. First, Defendants are correct that Plaintiff's as-applied challenge must fail because neither Crofoot nor the Township violated Plaintiff's Fourth Amendment rights. *See supra* Sections III.B.1.*ii*, III.B.2; *see also Vonderhaar v. Vill. of Evendale*, 906 F.3d 397, 400-01 (6th Cir. 2018) (district court correctly dismissed as-applied Fourth Amendment challenge to the municipality's building code where the municipality never conducted any search of the plaintiff's properties). Notably, although Plaintiff's as-applied challenge relies on the ordinance allowing an unconstitutional search, Plaintiff concedes that Crofoot's conduct did not effectuate

any search.  And as the Court concluded earlier, there was no Fourth Amendment seizure.

Next, the Court concludes that Plaintiff lacks standing to pursue any facial challenge.    At the hearing, defense counsel argued that any ruling on the constitutionality of Section 901(1)(D) would be an improper advisory opinion because no one in this case ever acted under the provision.  Plaintiff's counsel countered that this is a proper pre-enforcement action based on the threat of future constitutional harm.

Therefore, at issue is the requirement for standing that the claimant establish "an actual or imminent injury." *See Vonderhaar*, F.3d at 401; *see also Shelby Advocates for Valid Elections v. Hargett*, 947 F.3d 977, 980-81 (6th Cir. 2020) ("A plaintiff has Article III standing if he suffered an injury in fact that is concrete, particularized, and actual or imminent; fairly traceable to the defendant's challenged conduct; and likely to be redressed by a favorable judgment.").  "At the pleading stage, [the] plaintiff[] bear[s] the burden of alleging facts establishing each element of standing." *Hargett*, 947 F.3d at 981.  "And a plaintiff must demonstrate standing for each claim he seeks to press and for each form of relief that is sought." *Doe v. Univ. of Mich.*, 78 F.4th 929, 942 (6th Cir. 2023) (quotation marks and citation omitted).

In *Vonderhaar*, which as here involved claims that a municipality's building code violated the Fourth Amendment by permitting warrantless searches, the court dismissed the plaintiffs' facial challenge because they never suffered or were at risk of harm under the challenged code. *Vonderhaar*, F.3d at 399, 401-02.  In a similar case, the district court stated that "[u]nder *Vonderhaar*, as to standing, 'what matters' is whether the defendant has conducted an inspection of a property under its rental ordinance in violation of the Fourth Amendment . . . or whether there is a certainly impending risk that the defendant will do so." *Inv. Realty Servs., LLC v. Garden City,* No. 19-10198, 2019 U.S. Dist. LEXIS 144206, at *15 (E.D. Mich. Aug. 26, 2019).

Because Plaintiff has not plausibly pled that Crofoot violated the Fourth Amendment, nor does he contend that Crofoot ever preformed any inspection of his property under Section 901(1)(D), Plaintiff did not suffer any actual injury that would confer standing to pursue his constitutional challenges.[7] *See Vonderhaar*, F.3d at 401-02. And to the extent Plaintiff argues that he is subject to a substantial risk of future harm because of the unconstitutional ordinance, this argument is without merit.

Plaintiff's responsive brief argues that because "Crofoot proclaimed [that he] was returning" to reinspect the property in November 2023, "[a] warrantless search

---

[7] Although the Court addresses Plaintiff's standing as specifically related to a facial constitutional challenge, the analysis applies equally to Plaintiff's as-applied challenge.

has been creditably threatened (and would have happened except that [Plaintiff] took down his greenhouse . . . ).ʺ (ECF No. 17, PageID.377).  But plaintiff made no such assertions, nor *any* allegation of potential future harm, in the amended complaint as necessary to establish his standing at this stage of the proceedings. *See Hargett*, 947 F.3d at 981.  Although the amended complaint attaches the October 2023 violation notice from Crofoot indicting that ʺ[a] re-inspection will be conducted on or about November 28, 2023,ʺ (ECF No. 12-3, PageID.111), this—particularly when considered with the other facts of the amended complaint—does not establish any imminent injury to confer standing.

Specifically, it is clear that no reinspection ever occurred, and that Plaintiff voluntarily took down the greenhouse (which the Court already determined was prohibited by the Township's zoning ordinance).  Because the greenhouse no longer exists and there is no indication Crofoot intends to reenter Plaintiff's property in the imminent future, his claim is too speculative and must fail. *See Parsons v. United States DOJ*, 801 F.3d 701, 710 (6th Cir. 2015) (ʺImminent in this context is defined as certainly impending, in contradistinction to allegations of possible future injury.ʺ) (quotation marks and citation omitted); *White v. United States*, 601 F.3d 545, 554 (6th Cir. 2010) (ʺthe risk of false prosecution the plaintiffs face in this case is too speculative to confer standingʺ where based only the plaintiffs' subjective fear of such injury).

In sum, Plaintiff has failed to plausibly alleged an as-applied constitutional challenge, and he lacks standing to pursue any facial challenge. Count IV is dismissed.

### 4. Trespass

Lastly, Defendants argue that because all of Plaintiff's federal claims warrant dismissal, his state-law trespass claim should be dismissed as well. (ECF No. 16, PageID.275-276). The Court agrees.

Plaintiff asserts that the Court has supplemental jurisdiction over this claim under 28 U.S.C. § 1367. (ECF No. 12, PageID.92). The Sixth Circuit "applies a strong presumption against the exercise of supplemental jurisdiction once federal claims have been dismissed—retaining residual jurisdiction only in cases where the interests of judicial economy and the avoidance of multiplicity of litigation outweigh our concern over needlessly deciding state law issues." *Packard v. Farmers Ins. Co. of Columbus*, 423 F. App'x 580, 584 (6th Cir. 2011) (quotation marks and citation omitted); *see also Experimental Holdings, Inc. v. Farris*, 503 F.3d 514, 521 (6th Cir. 2007) ("Generally, once a federal court has dismissed a plaintiff's federal law claim, it should not reach state law claims.").

Here, in the interests of comity and judicial economy, the Court declines to exercise supplemental jurisdiction over the trespass claim because (1) all federal claims are dismissed, (2) no dispositive rulings have issued, (3) litigation costs are

lower in state court, and (4) the parties have yet to exert substantial effort briefing the merits of the claim. *See Packard*, 423 F. App'x at 584-85.

Accordingly, the Court does not address Defendants' alternate argument that Plaintiff's requested remedy is inappropriate for a state-law trespass claim. (*See* ECF No. 16, PageID.276-78). And none of the other miscellaneous statutes Plaintiff cited in his jurisdictional statement (*see* ECF No. 12, PageID.92) provides the Court jurisdiction over his state-law claim. Count III is therefore dismissed.

\* \* \*

For the reasons given, the Court ORDERS that Plaintiff's motion to take judicial notice (ECF No. 29) is DENIED.

IT IS FURTHER ORDERED that Defendants' motion to dismiss (ECF No. 16) is GRANTED.

IT IS FURTHER ORDERED that Plaintiff's amended complaint is DISMISSED WITH PREJUDICE.

Dated: March 31, 2025                    s/Robert J. White_____
                                         Robert J. White
                                         United States District Judge